IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CLARABELLE MOURA,

    Plaintiff,

v.

AMERICAN WEST STEAMBOAT
COMPANY LLC d.b.a. MAJESTIC
AMERICA LINE, and DOES 1 to 100,

    Defendants.

No. C 08-04025 WHA

**ORDER RE DEFENDANT'S
MOTION TO DISMISS FOR
IMPROPER VENUE AND
MOTION TO TRANSFER**

## INTRODUCTION

In this action, defendant moves to dismiss plaintiff's complaint for improper venue or, alternatively, to transfer the case to a district court in Washington. Because there are numerous facts still to be uncovered, this order will not decide the motion to dismiss on the merits at this time. Instead, an evidentiary hearing with live witnesses will be held on **WEDNESDAY, SEPTEMBER 16, 2009, FROM 1 P.M. TO 4 P.M.**

## STATEMENT

**1. FACTS.**

Plaintiff is Clarabelle Moura, a 77-year old woman who currently resides in Castro Valley with her retired husband. Some time before December 2006, Mrs. Moura was informed by her friend Mrs. Rita Pascoe about an Oregon and Columbia River cruise package with Majestic America Line (Moura Decl. at ¶ 5). Mrs. Moura and her husband decided that they would

1  join Mrs. Pascoe and her husband on a tour scheduled for March 18 to 25, 2007. Mrs. Moura
2  provided Mrs. Pascoe with her credit card information to purchase tickets on the Mouras' behalf.
3  Mrs. Pascoe bought the tickets. In December, Mrs. Moura received from Mrs. Pascoe what she
4  believed to be all the travel documents related to her ticket purchase, including a passenger
5  booklet. The itinerary she received contained a bolded paragraph entitled Rights Reserved and
6  Limit of Responsibility, which read as follows: "By accepting and/or using these vouchers,
7  the passenger agrees to the terms and conditions of that passage and tour contract, a full copy
8  of which is attached or available upon request." Mrs. Moura alleges that she did not receive a
9  Passenger and Tour Contract with the documents at this time (*id*. at ¶ 6).

10  On March 18, 2007, the Mouras embarked on their vacation. The Oregon portion of their
11  trip consisted of three days followed by the cruise portion. On March 24, after the cruise was
12  underway, the ship made a stop in Rainer, Oregon, to allow passengers to take a tour of Mt. Saint
13  Helens. During the disembarkment of passengers, Mrs. Moura requested wheelchair assistance
14  from cruise staff (*id*. at ¶ 9). An employee arrived and began to wheel Mrs. Moura backwards
15  down a ramp. In their descent, the employee suddenly let go of the wheelchair, which, along with
16  Mrs. Moura, accelerated down the ramp towards a small cement landing below. Mrs. Moura
17  was able to grab onto the railing but was subsequently ejected from her seat and thrown onto the
18  landing. She incurred serious injuries in the process (*ibid.*).

19  In April 2007, Mrs. Moura obtained Attorney Ilse Butterfield as counsel and gave her all
20  of the travel documents she had received, including the itinerary. Attorney Butterfield reviewed
21  the provision incorporating the Passenger and Tour Contract but did not request a copy of it from
22  defendant. Mrs. Moura alleges it was not until after July 1, 2008, that she first became aware
23  of the Passenger and Tour Contract, which defendant is now relying on to dismiss her claims.
24  She states that she was shown a faxed copy of the document from Northwest Adjusting Services,
25  Inc., to Attorney Butterfield (*id*. at ¶ 20). This is version one of the Passenger and Tour Contract,
26  which Mrs. Moura and her counsel apparently did not read until after the one-year limitations
27  period had expired. Defendant on the other hand claims that Mrs. Moura received a copy of the
28  Passenger and Tour Contract back in December 2006, as it was contained in each passenger

2

1  booklet mailed upon ticket purchase (Corbijn Decl. at ¶ 3).  Version two of the contract has an
2  introductory paragraph that notices the reader of important limitations set out in Sections 22
3  through 30.  That paragraph is absent from the faxed version.
4       Both versions of the contract contain a forum-selection clause requiring all suits against
5  defendant to be filed in Washington and a one-year limitation period on all suits beginning from
6  time of injury.

      **2.**      **PROCEDURAL HISTORY.**

8       This portion of the order recounts the tortured procedural history of the case, including
9  Attorney Butterfield's actions and conduct over the course of this lawsuit until she withdrew in
10  favor of new counsel.
11       Plaintiff's complaint was filed by Attorney Butterfield on August 22, 2008, after the
12  one-year limitation had expired, and defendant subsequently moved to dismiss the complaint
13  for improper venue.  In opposition to the motion, Attorney Butterfield submitted a memorandum
14  along with declarations from Mrs. Moura and herself, all of which were untimely but that was
15  the least of the problems.  Neither of the declarations was signed when they were electronically
16  filed on January 20, 2008.  In a hearing held on February 5, 2009, Attorney Butterfield presented
17  a signed copy of Mrs. Moura's declaration.  When Attorney Butterfield was questioned whether
18  plaintiff had signed the declaration, she represented unqualifiedly that Mrs. Moura had signed it.
19  Relying on the declaration in large part, the Court denied defendant's motion to dismiss.
20  Significantly, Mrs. Moura later on disavowed the signature on that declaration and stated that
21  she did not recall even seeing the January 20 declaration (Moura Decl. at ¶ 2–3).  Mrs. Moura's
22  in-court testimony on this point was credible.
23       Going back to the first hearing, it was also brought to light that Attorney Butterfield
24  was not admitted to practice in the United States District Court for the Northern District of
25  California.  Consequently, her filing of several court documents violated Civil Local Rule 11-1,
26  which requires that "only members of the bar of this Court may practice in this Court."
27  Attorney Butterfield, however, claimed that she had indeed been admitted to practice in this
28  district and that there must have been a clerical error.  In an order dated February 6, 2009, the

3

1 Court ordered her to rectify the problem, if there was one, within 21 calendar days from
2 February 6, 2006, and provide proof to that effect. After the deadline passed with no response,
3 the Court checked and found that she had never been admitted. Attorney Butterfield was ordered
4 to show cause by March 9, 2009, as to why the case should not be dismissed and why she should
5 not be sanctioned. On March 9, she submitted a late declaration, acknowledging that she was not
6 admitted in this district and stating that she was only admitted to practice in the Southern District
7 of California. She requested that the Court stay sanctions against her while she petitioned for
8 admission to the Northern District, and represented that she was actively seeking replacement
9 counsel for Mrs. Moura. Furthermore, she asked that her declaration be accepted despite its
10 untimeliness. The reason she provided was a series of medical emergencies prevented her from
11 working between February 26 and March 9, 2009. Taking her at her word, the undersigned judge
12 spoke to the Clerk of our District Court, who then, at the undersigned's request, personally
13 assisted her in navigating the process of becoming admitted to the bar of this district. Attorney
14 Butterfield communicated that she was admitted to the bar of the district court on March 20,
15 2009.

16 In a further hearing on March 24, 2009, she stated that she had served initial disclosures
17 on defendant. Defense counsel immediately replied that she had not done so. This issue was
18 left hanging as there was no immediate way to resolve the question. Then, on March 30, 2009,
19 Attorney Butterfield submitted a declaration, as she was required to do so, ratifying all prior
20 statements and filings she made before March 20, prior to becoming a member of the district
21 court. This declaration made no mention of the initial disclosures so she was ordered to state
22 under oath whether or not she had served them. Attorney Butterfield then responded in a
23 declaration that she had prepared the disclosures on February 26, 2009, and served them on
24 March 1, 2009, by U.S. mail. This statement, however, conflicted with prior statements she
25 made claiming that she was unable to work between February 26 and March 9, 2009, due to
26 medical illness.

27 When the other side identified the inconsistency, Attorney Butterfield retracted her former
28 statements. Her new declaration, dated April 23, 2009, alleged that her inability to work had

4

pertained only to court hearings and personal appearances, and that she was still seeking new counsel to replace her. She also accused defense counsel of being uncooperative on the matter of re-scheduling her and Mrs. Moura's pending deposition. Following a discussion with defense counsel, though, it appears this was incorrect. She filed an amended declaration to once again withdraw her previous statements. Time passed. Growing concerned with Mrs. Moura's legal representation and its prejudice to Mrs. Moura, the Court ordered Attorney Butterfield to address the steps she had taken to find new counsel since March 9, 2009. Her reply on June 5, 2009, claimed that she conducted many hours of Internet research on the matter and was planning to contact a local firm, whose name was provided to her by plaintiff's son on June 5.

In a hearing on June 23, 2009, conflicting statements were pointed out between Mrs. Moura's originally unsigned declaration — the same one Attorney Butterfield later presented to the Court as signed — and Mrs. Moura's deposition. The purported declaration stated that Mrs. Moura and Attorney Butterfield made several requests to defendant for documents relevant to her accident and the limitations period. In her deposition, however, Mrs. Moura testified that she never made any requests for such information. Clearly, some foul play was involved with the submission of Mrs. Moura's declaration. The finger of suspicion points to Attorney Butterfield.

Attorney Butterfield has continuously violated this Court's orders and civil local rules by failing to comply with deadlines. She repeatedly responded to orders late or not at all. She filed her opposition to defendant's motion to dismiss five days after the deadline provided for in Civil Local Rule 7-3, which left defendant only two days to reply. She also failed to serve her initial disclosures by the deadline set in the case management order. Most importantly, Attorney Butterfield has made numerous misleading statements at hearings and in declarations, and exhibited questionable conduct to the detriment of her client.

Whether Attorney Butterfield should be referred to the State Bar is a close question. Defendant has rightly protested her conduct and asks that her client's case be dismissed. Rather than dismiss the case, this order will refer Attorney Butterfield to our district's Standing Committee on Professional Conduct for a recommendation of whether Attorney Butterfield needs

5

1 counseling or mentoring and/or should be referred to the State Bar.  The chair of that committee
2 shall contact Attorney Butterfield, investigate, and report to the undersigned by the end of this
3 year.  Meanwhile, plaintiff has now excellent counsel.  Her case will be decided on the merits
4 without tarnish from her former counsel, except for the merits question of whether Attorney
5 Butterfield and her client should be faulted for letting the one-year limitations period elapse,
6 assuming, of course, that the clause is enforceable in the first place.

**ANALYSIS**

Forum-selection clauses in contractual agreements are generally presumed valid and enforceable by courts.  There are several recognized exceptions to this rule.  The Supreme Court has granted courts the authority to decline enforcement of a forum-selection clause if it can be shown that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *MS Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972).  Although the Court has not laid out the precise circumstances in which a forum-selection clause may be held unreasonable, such determination is not without a few guiding principles.  *First*, the Court has suggested that enforcement of an otherwise valid clause may be unreasonable if conducting trial in the specified forum would cause serious inconvenience to the plaintiff, therefore depriving him of his day in court.  *Id*. at 12.  *Second*, enforcement of a forum-selection clause may be found unreasonable if it would contravene public policy of the forum in which the suit was brought.  *Id*. at 15.  While the party hoping to avoid a forum-selection clause bears a heavy burden of proof, the Supreme Court has made clear that "forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness."  *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).

Before deciding whether to enforce a forum-selection clause, courts must first determine if the clause was reasonably communicated to the plaintiff before entering the contract. To determine "reasonable communicativeness," the Ninth Circuit has used a two-part test adopted from *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 865 (1st Cir. 1983).  The first prong requires courts to examine physical characteristics of the entire ticket, taking note of "[f]eatures such as size of type, conspicuousness and clarity of notice on the face of the ticket,

6

and the ease with which a passenger can read the provisions in question." The second prong requires courts to evaluate extrinsic circumstances surrounding the passenger's purchase and receipt of the contract. These circumstances include "the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket." *Diero v. American Airlines*, 816 F.2d 1360, 1364 (9th Cir. 1987) (internal citations omitted).

If both of these prongs are satisfied, then it may be assumed that the passenger was reasonably notified of any limiting terms and conditions in the cruise contract. This would include forum-selection clauses and shortened statutes of limitations. In maritime cases, cruise lines may reduce the statute of limitations for personal injury or death from three years to no less than one year. 46 U.S.C. 30508(b). As with forum-selection clauses, in order for a court to uphold a contract that limits the time in which a suit can be brought, the carrier must reasonably communicate the limitations period to the passengers and the contract must allow passengers at least one year from the date of injury to sue. *See Spataro v. Kloster Cruise, Ltd.*, 894 F.2d 44 (2d Cir. 1990); *Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125 (3d Cir. 2002). Whether a ticket provides reasonable notice to the passenger is a question of law. *Dempsey v. Norwegian Cruise Line*, 972 F.2d 998, 999 (9th Cir. 1992).

One fact issue here is whether the materials provided with the ticket to Mrs. Moura included the limitations. She says no. The company says yes. Another issue is whether Mrs. Moura's hiring of Attorney Butterfield is a relevant factor in assessing plaintiff's ability to become meaningly informed of the limitations period in the Passenger and Tour Contract, which Mrs. Moura claimed was not attached to her ticket. This goes to the second prong of the "reasonable communicativeness" test. Defendant cites *Shankles* for the proposition that following an accident, it is reasonable to expect a passenger to consult the limiting terms of her passenger contract to determine her rights, or to consult a lawyer for that purpose. *Shankles*, F.2d at 866. The Ninth Circuit has followed the First Circuit on this issue, but *only* in instances where the cruise ticket itself expressed limiting provisions or the passenger was in possession of the passenger contract before filing suit. Those are not the facts here. *Wallis v. Princess Cruises,*

7

*Inc.*, 306 F.3d 827, 835 (9th Cir. 2002), is a significant decision with factual premises that are more relevant to this case. In *Wallis*, the Ninth Circuit held that a ticket incorporating liability limitations by referring to another document was not reasonably communicative. The court gave great attention to the opaqueness and inaccessibility of the referenced document, which it stated were disincentives to the passenger to research the applicable limiting terms.

The factual disputes arising out of this case stem from two facially different contract versions when, if ever, Mrs. Moura received a copy of the contract, the circumstances under which she received it, and accessibility of the contract at the time it was purchased on her behalf, among other issues required by law to be evaluated. A related issue is whether defendant should be deemed estopped to raise the one-year bar by reason of the parties' communication after the accident, during which time no mention was made of the limitation until after it had passed. This order will not resolve those disputes at this time. This order finds that an evidentiary hearing with live witnesses is necessary. By **AUGUST 14, AT NOON**, both sides must promptly designate the witnesses that will testify at the evidentiary hearing. By **AUGUST 21**, **AT NOON**, each side must file declarations of those cooperating witnesses that shall constitute their direct testimony at the hearing, and subject to objections, non-cooperating witnesses must be subpoenaed. Both sides may notice and take up to three depositions, including but not limited to those persons designated as witnesses for the evidentiary hearing. The depositions should be conducted after the declarations.

**CONCLUSION**

An evidentiary hearing will be held on **WEDNESDAY, SEPTEMBER 16, 2009, FROM 1 P.M. TO 4 P.M.,** to further address defendant's motion to dismiss. Attorney Butterfield will be referred to the Standing Committee on Professional Conduct.

**IT IS SO ORDERED.**

Dated: August 3, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8